UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| THE PHYSICIANS ALLIANCE CORPORATION | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-203-SDD-RLB |
| WELLCARE HEALTH INSURANCE OF ARIZONA, INC., ET AL. | |

## ORDER

Before the Court is Plaintiff's Motion to Compel Production (R. Doc. 59) filed on December 15, 2017. The Motion is opposed. (R. Doc. 69). Defendants filed a Supplemental Opposition. (R. Doc. 72). Plaintiff filed a Reply. (R. Doc. 75). Oral argument was held on February 23, 2018. (R. Doc. 76).

### I. Background

The Physicians Alliance Corporation ("TPAC" or "Plaintiff") brought this action against WellCare Health Insurance of Arizona, Inc. and WellCare Health Plan, Inc. (collectively, "WellCare" or "Defendants") for alleged breach of an Independent Practice Association Agreement entered on April 1, 2004. (R. Doc. 22).

On or about September 13, 2016, TPAC propounded written discovery on WellCare. At issue is TPAC's Request for Production No. 35, which seeks production of all "documents and/or communications contained on any personal or business systems, electronic databases, serves, or document management systems" used by certain custodians. (R. Doc. 59-12).

On or about October 27, 2016, WellCare provided its response to Request for Production No. 35. (R. Doc. 59-4). WellCare objected to the request on the basis that it is overbroad, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of the case. WellCare asserted that it would conduct certain searches for certain custodians pursuant to an

agreement reached by the parties on September 16, 2016.  WellCare also identified certain custodians who left WellCare's employment, and whose information on their H:Drives would have been periodically saved to backup tapes.  WellCare represented that restoring those backup tapes would cost approximately $332,400.

On February 3, 2017, after the parties held a conference regarding Request for Production No. 35, defense counsel agreed to obtain "further detail regarding the cost and time that would be involved in restoring the H drives of former WellCare employees." (R. Doc. 59-16 at 3).

On April 11, 2017, at the parties' request, the Court held its first telephone conference on the issue of the backup tapes. (R. Doc. 36).  The Court ordered the parties to file a joint status report on the issues, and to schedule an additional conference if needed. (R. Doc. 36 at 2).  The parties filed joint status reports on May 11, 2017, June 13, 2017, and August 17, 2017 to inform the Court that Wellcare was determining how to address the issue of the backup tapes. (R. Doc. 37; R. Doc. 39; R. Doc. 46 at 3-5).

On August 26, 2017, and in light of the parties' continued efforts regarding the backup tapes, the Court extended, among other things, the deadline to complete all non-expert discovery to December 15, 2017. (R. Doc. 46).

On August 30, 2017, defense counsel informed Plaintiff's counsel that the cost of restoring the backup tapes for the years 2003-2004 would be $211,500 and the cost of restoring the backup tapes for the year 2011 would be $372,800, for a total of $584,300. (R. Doc. 59-24).

On August 31, 2017, the Court held a telephone conference with the parties, at which defense counsel represented that cost estimates had been obtained to recover the years 2003-2004 and 2011, and that data had been recovered for the other years from 2003 to 2012. (R. Doc. 49).

On September 18, 2017, the Court held a telephone conference with the parties, at which defense counsel represented that data for the recovered years had been produced. (R. Doc. 53).

On October 11, 2017, the Court held a telephone conference with the parties, at which counsel for both parties represented that they needed additional time to discuss outstanding issues regarding the backup tapes. (R. Doc. 54).

On October 20, 2017, Plaintiff's counsel informed the Court "that two or three weeks ago, the server that held H:Drive data for the 2003-2004 restores suffered a catastrophic cascade hardware failure" and that "[t]his backup server is now inaccessible/non-bootable." (R. Doc. 55 at 5).[1]

On October 23, 2017, the Court held an in-person status conference with the parties, at which the parties informed the Court that they would continue to confer in an attempt to resolve the outstanding issues regarding the backup tapes. (R. Doc. 55).

On October 30, 2017, in light of additional correspondence from the parties regarding the backup tapes, the Court held a telephone conference and ordered the parties to address the dispute through the filing of formal discovery motions by December 15, 2017. (R. Doc. 56).

On December 13, 2017, the Court held a final telephone status conference with the parties, at which Plaintiff's counsel represented that TPAC would be filing a motion to compel. (R. Doc. 58).

On December 15, 2017, TPAC filed the instant Motion to Compel Production (R. Doc. 59). TPAC seeks an order requiring WellCare to produce all data from the backup tapes for the years 2003-2004 and 2011 at WellCare's expense or, in the alternative, an order permitting TPAC's expert to conduct a physical examination of WellCare's backup tapes for the years 2003-2004 and 2011. (R. Doc. 59 at 8). In support of the motion, TPAC argues that the 2003-2004, and 2011

---

[1] At oral argument, defense counsel clarified that this "catastrophic cascade hardware failure" was the result of a power surge.

backup tapes contain information relevant and proportional to the needs of the case. (R. Doc. 59-1 at 10-18).

On January 30, 2018, after obtaining an extension from the Court, WellCare filed its Opposition. (R. Doc. 69). WellCare represents that it retained an outside consultant, Hunter McMahon, to work with WellCare's Information Technology department on understanding the underlying technical issues. (R. Doc. 69 at 2). WellCare also argues that the discovery sought is not proportional to the needs of the case on the basis that the data is likely to be cumulative of prior productions, carries little relevance, and is not reasonably accessible and may not be recoverable at all. (R. Doc. 69 at 8-11). WellCare further argues that allowing TPAC's experts to conduct a physical examination of the backup tapes would create a significant security risk and is likewise not proportional to the needs of the case. (R. Doc. 69 at 11-12).

On February 17, 2018, WellCare's Supplemental Opposition was entered into the record. (R. Doc. 72). Counsel for WellCare represents to the Court that prior understandings regarding discovery, and consequently certain representations to opposing counsel and the Court, were inaccurate. WellCare represents that in light of the expertise of its outside consultant, it has determined the following: (i) the 2003-2004 backup tapes may be recovered by an outside vender in a range from $7,319.83 to $12,968.83; (ii) the 2005-2006 backup tapes are "not recoverable due to the back-ups being corrupt or incomplete" and have always been "unavailable"; (iii) some of the 2007-2010 and 2012 backup tapes, though recovered by WellCare, may not have been produced; and (iv) no backup tapes were ever made for the year 2011. (R. Doc. 72 at 3-5).

Counsel for WellCare also provided some explanation as to how the earlier and significant cost estimates were calculated for recovery and production of prior years. It is also apparent, however, that based on the now revealed fact that certain backup tapes have always been unavailable, months of the Court's time and efforts have been wasted and reasonable diligence

4

should have revealed that any "estimates" were not based on any specific analysis or inquiry. In addition, no satisfactory explanation has been provided as to how multiple representations were made to the Court regarding the completed production of certain years of data, only to now be told that not only is that inaccurate, but that for certain years this data never existed.

In reply, TPAC questioned, among other things, the facts relied upon for TPAC's prior cost estimates for production, and whether the production of backup tapes for 2005-2006 and 2011 is truly impossible. (R. Doc. 75).

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to

show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 34 provides a party with 30 days after service of the discovery to respond or object unless otherwise stipulated by the parties. *See* Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond fully to discovery requests made pursuant as to Rules 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**B.     Analysis**

Having reviewed the pleadings and the arguments of the parties, the Court concludes that the remaining discovery sought in response to TPAC's Request for Production No. 35, as modified by the parties, falls within the scope of discovery as defined by Rule 26(b)(1). Foremost, given the modifications of the original request as agreed upon by the parties, there no longer appears to be a dispute regarding the relevance of the information sought. WellCare raised no such argument in its briefing or at oral argument.

Moreover, TPAC has demonstrated that the discovery sought is proportional to the needs of the case. WellCare does not dispute that the issues at stake in the action are important. The amount in controversy exceeds $20 million. WellCare has sole access to the relevant information sought, even if some information may not ultimately be recoverable. Given WellCare's modified estimates for recovering information on the 2003-2004 backup tapes (down from $211,500 to no more than $13,000), and its current representation that it did not create backup tapes for 2011 (despite the previous estimate that it would cost $372,800 to recover and produce the information on these

backup tapes), WellCare has adequate resources to produce any recoverable documents. Finally, despite WellCare's arguments that the information on the backup tapes will "likely be cumulative" of prior productions, at oral argument, WellCare's counsel represented that only 71% of the data recovered has been duplicative of other information produced. In light of the foregoing, the likely benefit of the discovery sought outweighs any burden or expenses placed on WellCare.

Having concluded that the information sought falls within the scope of discovery, the Court will grant the primary relief sought by Plaintiff. Of course, to the extent the backup tapes for 2003-2004 and 2005-2006 cannot be recovered, and to the extent that backup tapes for 2011 never existed, WellCare will not be able to produce any documents. WellCare represented to the Court at oral argument that it would have an answer as to whether the 2003-2004 data is recoverable within 1 to 3 weeks.

To the extent WellCare represents that information for any of the foregoing years are unavailable, the Court will not, at this time, order WellCare to allow Plaintiff's experts to inspect these backup tapes. This will be addressed in a separate order once the Court learns of the conclusion regarding all backup tapes and has heard from the parties regarding any concerns involved with inspection by Plaintiff's experts.

Finally, WellCare has represented that certain information from the 2007-2010 and 2012 backup tapes, though recovered, may not have been produced as previously represented. At oral argument, WellCare's counsel represented that it would require 60 days to review this information (as well as any information recovered from 2003-2004) for production. Given that there is no dispute that this information is responsive to Request for Production No. 35, as modified by the parties, the Court will require this information to be produced as well.

**III. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Compel Production (R. Doc. 59) is **GRANTED**.

**IT IS FURTHER ORDERED** that **on or before March 16, 2018**, WellCare shall file a Status Report regarding 2003-2004 ESI back up tapes, informing the Court and opposing counsel of any conclusions reached regarding the recoverability of information from those tapes and the status of any recovery, if possible.

**IT IS FURTHER ORDERED** that WellCare shall produce all non-privileged information obtained from any H:Drive backup tapes for the years 2003-2012 that is responsive to Plaintiff's Request for Production No. 35, as narrowed by the parties' agreements, within **60 days** of the date of this Order.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on February 27, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**